UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant.

No. 69 Civ. 200 (DNE).

United States District Court,
S. D. New York.

Dec. 6, 1979.

U.S. Dept. of Justice, Antitrust Div., for plaintiff United States of America.

Cravath, Swaine & Moore, New York City, for defendant IBM.

MEMORANDUM AND ORDER

EDELSTEIN, Chief Judge:

International Business Machines Corporation and Burke Marshall have moved this court for a protective order pursuant to Federal Rule of Civil Procedure 26(c) that production not be had under paragraph 2 of plaintiff's trial subpoena directed to Marshall. IBM has also moved this court for a protective order pursuant to Rule 26(c) that

production not be had under plaintiff's trial subpoena directed to IBM in connection with Marshall's expected trial testimony, or, in the alternative, if the subpoena is enforced, that documents or information produced in response to paragraphs 1–4 of the subpoena be sealed. Marshall, former General Counsel and Vice-President of IBM, is scheduled to testify on IBM's behalf.

## TRIAL SUBPOENA SERVED ON MARSHALL

Paragraph two of the trial subpoena commands Marshall to produce "[s]uch documents as will show the assets owned by you and the estimated value of each" or a "signed and notarized statement by you based upon and adequately summarizing the information contained" in such documents. IBM and Marshall characterize that request as a "pervasive, gratuitous invasion of Mr. Marshall's privacy" which is "utterly irrelevant to [his] testimony . . . ." Memorandum of IBM and Marshall at 2. They do not seek a protective order with respect to the remaining four paragraphs of the subpoena.[1]

Prior to the filing of the instant motion, the government offered "to accept a quantification of the proportion of the witness' total assets and net worth that is represented by his holdings in IBM securities . . . in lieu of the more detailed information called for in paragraph two . . . ." Letter from Robert J. Staal to Thomas D. Barr, dated November 14, 1979. That proposal is put forth once again by plaintiff in its response to the instant motion, and the court considers paragraph two of plaintiff's subpoena modified to that effect. Counsel for IBM and Marshall labels the offer a "sham": "The value of Mr. Marshall's holdings in IBM securities, coupled with the percentage of his total assets and net worth represented by those holdings, is no different from requiring Mr. Marshall to compile and disclose his total assets and total net worth. That is precisely what Mr. Marshall

is unwilling to do . . . ." Affidavit of Thomas D. Barr, dated November 20, 1979 at 5.

█ Inquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential if bias is to be uncovered. Personal motives must be factored in when assessing a witness' credibility. These hornbook propositions have been applied throughout the trial of this case. For example, in 1974 IBM moved to compel two of plaintiff's witnesses, partners in a New York investment firm, to answer questions during depositions relating to their financial interest, and that of their firm, in the electronic data processing (EDP) industry. IBM counsel alleged that although plaintiff's witnesses were not parties to the case, they had a financial stake in its outcome which had to be explored during cross-examination: "The shroud of secrecy [the firm] and its partners are attempting to place over that financial interest forecloses IBM and ultimately the Court from developing the kind of information that may help place their trial testimony in a more realistic context." Affidavit of Joseph R. Sahid, dated July 16, 1974 at 4. The court agreed with IBM. Adequate cross-examination could not be conducted without financial information from the witnesses and without information revealing their firm's interest in the EDP industry; that is, the firm's profits and losses from EDP investments *and* the proportion of the firm's total profits and losses derived from those investments. *United States v. International Business Machines Corp.*, 66 F.R.D. 215, 219 (S.D.N.Y.1974). In granting IBM's motion to compel, the court made clear that "the extent of a witness' motives and his interest in the outcome of the case bear importantly upon an evaluation of the witness' objectivity, his bias, and the weight to be accorded his testimony." 66 F.R.D. at 219.

1. Those paragraphs demand certain financial information (e. g., securities held, deferred compensation plans, retainer agreements) relating to Marshall's and in one instance his immediate family's, interest in IBM. Counsel for IBM and Marshall requests that if such information is used at trial, it be accorded confidential treatment by the court.

The relevance to Marshall's cross-examination of the amount of IBM securities he holds, and the proportion of such securities to his total assets and net worth, is too plain to require exposition. To be sure, that information will yield figures representing Marshall's total assets and net worth. Marshall need not, however, list and value each and every asset or debt he possesses. The court will enforce paragraph two of the subpoena only to the extent of plaintiff's offer to accept a "quantification of the proportion of the witness' total assets and net worth that is represented by [Marshall's] holdings in IBM securities." Moreover, financial information produced by Marshall pursuant to the subpoena, and designated by him to be confidential, shall not be disclosed by plaintiff to any one other than its trial attorneys engaged in the preparation of Marshall's cross-examination. If and when plaintiff seeks to introduce such information at trial, the court will entertain a request by Marshall's counsel that testimony or documents be accorded confidential treatment.

## TRIAL SUBPOENA SERVED ON IBM

IBM plans to rely on Marshall's testimony for two purposes: (1) to enable the court to determine how much weight should be given to documents on which IBM's privilege claims were rejected and which the government subsequently placed in evidence, and (2) to challenge the court's rulings on IBM's privilege claims. Tr. 90296–90300; Exhibit A of Affidavit of Burke Marshall. Paragraphs 1–4 of the subpoena require IBM to produce all documents relating to the employment and compensation of Marshall. Paragraph 5 requires the production of documents "relating or referring to the structure, authority, responsibility or activities of IBM's legal department" between June 1, 1965 and May 1, 1970. Paragraph 6 seeks documents of IBM's legal department relating to IBM's claims of privilege. Paragraph 7 requires the production of a letter of George B. Turner addressed to Burke Marshall. The plaintiff has dropped its demand for the letter sought by Paragraph 8. Memorandum of the Government at 11.

IBM first argues that this subpoena is an abrogation of the government's representation, made by plaintiff in seeking authority to depose certain of defendant's witnesses, not to seek documents owned by IBM from IBM-employee witnesses. The court has previously rejected this argument both as to trial and deposition subpoenas. See Memorandum and Order of March 15, 1979 (deposition subpoena of Erich Bloch); Endorsement of March 9, 1979 (trial subpoena of Thomas Spain). In *Bloch*, the government, responding to IBM's argument regarding the government's alleged representation, claimed that this statement had to be read in context with another government representation to limit its subpoenas to company owned documents within the custody and control of the subpoenaed witness which were relevant to cross-examination. The court declined to "join in the verbal gymnastics in which the parties [were] engaged," Memorandum and Order of March 15, 1979 at 5; rather, it enforced the subpoena because it was necessary to effective cross-examination. In the present motion, IBM objects that plaintiff's subpoena exceeds the government's own reading of its representation because the IBM documents sought are not within the custody and control of the subpoenaed witness, who is no longer an employee of IBM. This argument is inapposite. Representations made by the government when it sought authority to depose defendant's prospective trial witnesses do not apply to a *trial* subpoena demanding IBM documents directly relevant to cross-examination of this witness—the former General Counsel and Vice-President of IBM. It is clear the court can enforce a trial subpoena requiring production of documents in the custody and control of IBM and relevant to the testimony of its prospective witness. In fact, the use of a subpoena duces tecum served on a party to require production of documents at trial predates the Federal Rules of Civil Procedure. 5A Moore's Federal Practice ¶ 45.05[2] at 45–39 & n.12 (2d ed.); *see* 4A Moore's Federal Practice ¶ 34.03[1] (2d ed.).

■ IBM further argues that the documents sought by paragraphs 5–8 of the subpoena, which relate to the period June 1965 through May 1970, could have been obtained by the government during pretrial discovery. However, it could not reasonably be anticipated during the pre-trial discovery period that Burke Marshall would be called to testify regarding the Special Master privilege rulings.[2] Marshall was first listed as an IBM witness on June 3, 1974, one month before pre-trial discovery was to be completed, with an explanation that his appearance as a witness was tentative.[3] Only in its direct case listing of January 31, 1978, did IBM confirm its intention to call Marshall as a witness.

Thirdly, IBM claims that the trial subpoena is unreasonable and oppressive, in that "attempted compliance with plaintiff's subpoena would require IBM to review approximately three million document pages, contained in decade or more old files . . . scattered through various document retention centers." Memorandum of IBM at 3. Defendant asserts that paragraphs 5 and 6 "together represent the overwhelming portion of the burden of compliance." Affidavit of Thomas D. Barr, dated November 20,

1979 at 3. In its response papers, the government has agreed to accept the 400 documents listed in Exhibit B to the Affidavit of Thomas D. Barr, in lieu of further production pursuant to paragraph 5 of the subpoena, provided the court order the defendant to specify for the first 158 documents in Exhibit B the following information:

(a) Special Master log sheet numbers, if any;

(b) microfilm reel and target sheet numbers, if any;

(c) the date of production to the plaintiff, for documents without special master or microfilm numbers.

Memorandum of the Government at 8. The court considers paragraph 5 of the subpoena to be modified as stated in the government's memorandum, and orders the defendant to provide plaintiff with the information it seeks for the 158 documents.[4]

The government has also offered to narrow the production called for by paragraph 6 of the subpoena,[5] Memorandum of the Government at 9. The court finds the trial subpoena, as modified by the government in its response, not to be unreasonable and oppressive.

---

**2.** The government asserts that it had not seen any of the documents on which the Special Masters rejected IBM's privilege claims, and which the government subsequently introduced into evidence, until after the completion of pretrial discovery. Memorandum of the Government at 4.

**3.** The IBM witness list included the name of Burke Marshall with the following explanation:

The present and former Vice-President and General Counsel of defendant, Nicholas deB. Katzenbach and Burke Marshall, are listed as potential witnesses. Given the production of privileged documents compelled by the Court's orders and possible use of such documents by plaintiff and for other reasons as well, it may be necessary to call either or both of them as witnesses so that the record on one or more of the issues will be complete. Should that become necessary, it may also be necessary for defendant to waive the attorney-client privilege with respect to one or more of the issues. However, defendant has not yet made the decision to call either of those two as witnesses and would not expect to make that decision until after the close of plaintiff's case.

**4.** Plaintiff apparently already has the 400 documents listed in Exhibit B. Affidavit of Thomas D. Barr, dated November 20, 1979 at 3.

**5.** The government requests the court to order the production of only those documents called for which are physically located:

(a) in all of the files kept by, of or for IBM's General Counsel for the period June 1, 1965 to May 1, 1970;

(b) in all of the files kept by, of, or for the Group Counsel in IBM's System Development and Manufacturing Group for the period June 1, 1965 to February, 1966, and in IBM's Data Processing Group for the period February 1, 1966 to May, 1970;

(c) in all of the files kept by, of, or for IBM's Office of Business Practices for the period June 1, 1965 to May 1, 1970;

(d) in all of the files kept by, of, or for IBM's Corporate Counsel for Antitrust for the period June 1, 1965 to May 1, 1970;

(e) in all of the files kept by, of, or for Burke Marshall or H. Bartow Farr, Jr. for the period June 1, 1965 to May 1, 1970.

Lastly, IBM seeks confidential treatment for any documents it may be required to produce under paragraphs 1–4 of the subpoena. Documents which the defendant produces and designates confidential shall be accorded by the government the confidential treatment set forth in paragraphs 1, 3, 4, 5 of the court's April 17, 1979 order. If and when plaintiff seeks to introduce such information at trial, the court will entertain a request by counsel that testimony or documents be accorded confidential treatment.

Accordingly, the motions for protective orders are denied.

So ordered.